IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

MICHELLE L. YOUNG,

      Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.

No. C11-0025

RULING ON JUDICIAL REVIEW

TABLE OF CONTENTS

I.     **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    *PROCEDURAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . 2

III.   *PRINCIPLES OF REVIEW* . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.   *FACTS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
     A.    *Young's Education and Employment Background* . . . . . . . . . . . . 5
     B.    *Administrative Hearing Testimony* . . . . . . . . . . . . . . . . . . . . 5
           1.    *Young's Testimony* . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
           2.    *Vocational Expert Testimony* . . . . . . . . . . . . . . . . . . . . 5
     C.    *Young's Medical History* . . . . . . . . . . . . . . . . . . . . . . . . . 6

V.    *CONCLUSIONS OF LAW* . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
     A.    *ALJ's Disability Determination* . . . . . . . . . . . . . . . . . . . . 11
     B.    *Objections Raised By Claimant* . . . . . . . . . . . . . . . . . . . . 13
           1.    *Dr. Risk's Opinions* . . . . . . . . . . . . . . . . . . . . . . . . 13
           2.    *Credibility Determination* . . . . . . . . . . . . . . . . . . . . 16
           3.    *Debilitating Fatigue* . . . . . . . . . . . . . . . . . . . . . . . . 19
           4.    *Hypothetical Question* . . . . . . . . . . . . . . . . . . . . . . . 21

VI.   *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

VII.  *ORDER* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Michelle L. Young on March 8, 2011, requesting judicial review of the Social Security Commissioner's decision to deny her applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits. Young asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her disability insurance benefits and SSI benefits. In the alternative, Young requests the Court to remand this matter for further proceedings.

## II. PROCEDURAL BACKGROUND

On August 2, 2007, Young applied for both disability insurance benefits and SSI benefits. In her applications, Young alleged an inability to work since January 31, 2006 due to Graves' disease, hypothyroidism, epilepsy, insomnia, narcolepsy, fibromyalgia, anxiety, and depression. Young's applications were denied on February 27, 2008. On June 21, 2008, her applications were denied on reconsideration. On August 5, 2008, Young requested an administrative hearing before an Administrative Law Judge ("ALJ"). On November 12, 2009, Young appeared via video conference with her attorney before ALJ John E. Sandbothe for an administrative hearing. Young and vocational expert Julie A. Svec testified at the hearing. In a decision dated December 11, 2009, the ALJ denied Young's claims. The ALJ determined that Young was not disabled and not entitled to disability insurance benefits or SSI benefits because she was functionally capable of performing her past relevant work as a banquet server. Young appealed the ALJ's decision. On February 16, 2011, the Appeals Council denied Young's request for review. Consequently, the ALJ's December 11, 2009 decision was adopted as the Commissioner's final decision.

On March 8, 2011, Young filed this action for judicial review. The Commissioner filed an Answer on July 15, 2011. On August 19, 2011, Young filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that she is not disabled and that she could perform her past work as a banquet server. On October 19,

2011, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On June 1, 2011, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

### III. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). Title 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the ALJ's decision if it is supported by substantial evidence on the record as a whole." *Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) (citation omitted). Evidence is "substantial evidence" if a reasonable person would find it adequate to support the ALJ's determination. *Id.* (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)); *see also Wildman v. Astrue*, 596 F.3d 959, 963-64 (8th Cir. 2010) ("'Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.' *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Moore v. Astrue*, 623 F.3d 599, 602 (8th Cir. 2010);

*see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Casey v. Astrue*, 503 F.3d 687 (8th Cir. 2007), the Eighth Circuit further explained that a court "will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 691 (citations omitted). "A decision is not outside that 'zone of choice' simply because [a court] may have reached a different conclusion had [the court] been the fact finder in the first instance." *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006). Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams*, 393 F.3d at 801 (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman*, 596 F.3d at 964 ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## IV. FACTS

### A. Young's Education and Employment Background

Young was born in 1982. She did not graduate from high school, but later earned her GED. She also earned certificates in firefighting, EMP, and ERT.

The record contains a detailed earnings report for Young. From 1998 to 2006, Young earned between $1,167.84 (1998) and $15,787.78 (2004). She has no earnings since 2006.

### B. Administrative Hearing Testimony

#### 1. Young's Testimony

At the administrative hearing, Young's attorney inquired why Young believed she became unable to work in 2006. Young replied that "[j]ust the seizures and just kept having to go on more medication and it kept having more problems after that."[1] Young's attorney also asked Young to discuss her diagnosis of fibromyalgia:

> Q: Okay. Fibromyalgia is also a diagnosis, how are you effected by that? . . .
>
> A: I don't want to get out of bed some mornings. It goes, it starts, it can start in my shoulders and my elbows, in the front of my elbows, I can feel it in the back, I can feel it -- sometimes I've been sleeping and on my hips, more on my right hip, it will go all the way down to the, the middle of my shin and this is the most unbearable pain in my leg and it just stays. I can't describe the pain but it has woken me up to the point I have been just I guess almost yelling.

(Administrative Record at 51.) Young rated her pain as 8.5 on a scale on 1 to 10, with 10 being the most severe.

#### 2. Vocational Expert Testimony

At the hearing, the ALJ provided vocational expert Julie A. Svec with a hypothetical for an individual who is able to:

---

[1] Administrative Record at 45.

> lift 20 pounds occasionally and 10 pounds frequently. She
> could only occasionally balance, stoop, crouch, kneel, crawl,
> climb. I'm going to limit her to simple, routine, repetitive
> work, superficial contact with the public, regular pace.

(Administrative Record at 58.) The vocational expert testified that under such limitations, Young could perform her past work as a banquet server. The ALJ provided the vocational expert with a second hypothetical which was identical to the first hypothetical except that the individual would need "two or more absences per month, two or more unscheduled breaks when she is there and a slow pace for up to one-third of the day[.]"[2] The vocational expert testified that under such circumstances, the individual would be precluded from competitive employment.

### C. Young's Medical History

On May 8, 2006, Young met with Dr. Erik K. St. Louis, M.D., regarding difficulties with seizures. Specifically, Young:

> had two seizures since [October 1, 2005], including one
> witnessed generalized tonic-clonic seizure in which her mother
> described that she had witnssed [sic] [Young] to walk around
> aimlessly in a circle, and then she would have to assist her to
> the ground and she began to convulse. [Young] was then
> amnestic and postictal for several minutes.

(Administrative Record at 261.) Upon examination, Dr. St. Louis diagnosed Young with epilepsy (type unspecified), insomnia, and anxiety. Dr. St. Louis prescribed medication and ordered further evaluation as treatment.

On April 16, 2007, Young met with Dr. Wes S. Houston, Ph.D., for a neuropsychological examination. In reviewing her medical history, Dr. Houston noted that Young has a longstanding history of anxiety and a history of 5 seizures in her lifetime. Dr. Houston also noted Young suffers from frequent headaches, forgetfulness, and insomnia. Upon examination, Dr. Houston found that "Young demonstrated impaired memory, processing speed and executive functions of unclear but likely multiple etiologies

---

[2] Administrative Record at 58.

including a seizure disorder, psychiatric illness and possibly side effects from anxiolytics."[3] Dr. Houston recommended medication and psychiatric evaluation as treatment.

In July 2007, Young met with her treating physician, Dr. Winthrop S. Risk, II, M.D., regarding generalized seizures and low back pain. Dr. Risk noted that Young suffers from seizures, migraines, low back pain, and insomnia. Dr. Risk found that Young's seizures were under control with medication, but she continued to have back pain and insomnia. Dr. Risk prescribed new medication to treat Young's back pain and insomnia.

On January 24, 2008, Dr. Robert Hughes, M.D., reviewed Young's medical records and provided Disability Determination Services ("DDS") with a physical residual functional capacity ("RFC") assessment for Young. Dr. Hughes determined that Young could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Hughes found no postural, manipulative, visual, or communicative limitations. Dr. Hughes opined that Young should avoid all exposure to hazards such as machinery and heights.

On February 19, 2008, Young was referred to Dr. Harlan J. Stientjes, Ph.D. by DDS, for a psychological evaluation. Upon examination, Dr. Stientjes diagnosed Young with major depressive disorder, generalized anxiety disorder, and seizure disorder. Dr. Stientjes opined that:

> [Young] can understand and remember simple oral and written instructions. Carrying them out from one day to the next may have interference from anxiety and depressive symptoms. She tends to be slow at processing, asking for repetition. She lacks self-confidence and likely sets herself up as a victim of teasing. She feels highly embarrassed about the potential for seizure and, therefore, will be highly inhibited in any interactions. . . .

---

[3] Administrative Record at 263.

> Response to workplace changes will require significant support
> supervision and a higher level than typical of reassurance.

(Administrative Record at 362.)

On February 26, 2008, Dr. Richard Kaspar, Ph.D., reviewed Young's medical records and provided DDS with a psychiatric review technique and mental RFC assessment for Young. On the psychiatric review technique assessment, Dr. Kaspar diagnosed Young with major depression and generalized anxiety disorder. Dr. Kaspar determined that Young had the following limitations: mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Kaspar determined that Young was moderately limited in the ability to: carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, respond appropriately to changes in the work setting, and set realistic goals or make plans independently of others. Dr. Kaspar concluded that:

> [Young] is very anxious, displays some cognitive slowing,
> which may or may not be an artifact of her medication, which
> is additionally true of some evidence of a slurring of speech.
> Clearly identified mental [impairments] are Generalized
> Anxiety Disorder and Major Depression. Her allegations are
> fully credible and her [impairments] are severe, imposing
> Moderate limitations on social functioning, concentration,
> persistence, and pace.

(Administrative Record at 377.) Dr. Kaspar further concluded that Young "retains the capacity to maintain a regular schedule, routine, and pace, where stress level in [sic] manageable and where the need for quick adaptive change is minimal."[4]

On June 10, 2008, Dr. Sandra Davis, Ph.D., reviewed Young's medical records and provided DDS with a second psychiatric review technique and mental RFC assessment for Young. On the psychiatric review technique assessment, Dr. Davis diagnosed Young with major depression, obsessive-compulsive disorder, and cannabis abuse, in early remission. Dr. Davis determined that Young had the following limitations: mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Davis determined that Young was moderately limited in the ability to: understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, respond appropriately to changes in the work setting, and set realistic goals or make plans independently of others. Dr. Davis concluded that:

> [Young's activities of daily living] include regular independent self-care, as well as care of her toddler daughter. She prepares simple meals. She does minor cleaning, dusting, some laundry, and picking up toys. She cannot drive due to seizures. She will do some grocery shopping when with someone. . . . She watches TV and plays with her daughter. . . . She does not have much social life and is inclined to 'take it out' on her family. Her attention is variable, dependent upon her interest. She does not follow instructions well. She does not handle stress well. She is afraid of having a seizure in public and so avoids being around others much. . . .

---

[4] Administrative Record at 366.

> The medical evidence is consistent. [Young's] allegations lose
> some credibility due to her noncompliance at times, denial of
> illness, and lack of psychiatric follow up.

(Administrative Record at 437.)

On November 5, 2008, Dr. Risk filled out a "Seizures Residual Functional Capacity Questionnaire" for Young, provided by Young's attorney. Dr. Risk diagnosed Young with generalized epilepsy. Dr. Risk indicated that Young had seizures "every 5 months or so." According to Dr. Risk, Young's seizures are brought on by stress and sleep deprivation. Following a seizure, Young suffers from the following symptoms: confusion, exhaustion, irritability, and muscle strain. In the aftermath of a seizure, Young is "incapacitated, disoriented, tired and goes to bed."[5] Young's seizure disorder is treated with medication. Side-effects of the medication include, lethargy and lack of alertness. Dr. Risk noted that Young as other mental problems associated with her seizure disorder, including depression, irritability, social isolation, poor self-esteem, and memory problems. Dr. Risk indicated that Young is restricted from working at heights, working with machinery, and operating a motor vehicle. Dr. Risk also indicated that Young would require more supervision than an unimpaired worker. Lastly, Dr. Risk opined that Young would need unscheduled breaks during an 8-hour workday, such as daily naps lasting 30 minutes to 1 hour.

On the same date, Dr. Risk also filled out a "Fibromyalgia Residual Functional Capacity Questionnaire" for Young. Again, the questionnaire was provided to Dr. Risk by Young's attorney. Dr. Risk indicated that Young meets the American College of Rheumatology criteria for fibromyalgia. Dr. Risk identified the following symptoms of fibromyalgia for Young: multiple tender points, nonrestorative sleep, chronic fatigue, morning stiffness, muscle weakness, frequent and severe headaches, numbness and tingling, anxiety, panic attacks, depression, hypothyroidism, and carpal tunnel syndrome. Dr. Risk described Young's fibromyalgia as chronic daily pain which is worse with

---

[5] Administrative Record at 443.

activity. Dr. Risk opined that Young's fibromyalgia would "frequently" interfere with her attention and concentration in a work setting. Dr. Risk found that Young had the ability to: (1) walk 1-2 city blocks, (2) sit for 1 hour at a time before needing to get up, (3) stand for 15-20 minutes at one time before needing to sit down, and (4) stand/walk for a total of 4 hours in an 8-hour workday. Dr. Risk also opined that Young would need a 10 minute break every hour during an 8-hour workday. Lastly, Dr. Risk indicated that Young would miss about 2 days of work per month as a result of her impairments or treatment.

On May 18, 2009, Young met with Dr. Risk regarding her fibromyalgia. Upon examination, Dr. Risk diagnosed Young with fibromyalgia, narcoleptic-like sleep disorder, and insomnia. Dr. Risk noted that Young suffers from fibromyalgia, migraine headaches, seizures, excessive daytime sleepiness, insomnia, and anxiety. Dr. Risk also noted an abnormal multiple sleep latency test. Dr. Risk treated Young with medication. In September 2009, Dr. Risk continued to treat Young for fibromyalgia, migraine headaches, seizures, excessive daytime sleepiness, insomnia, anxiety, and attention deficit disorder. Dr. Risk opined that he supported "her application for Social Security disability as she has no alternatives really."[6]

## V.  CONCLUSIONS OF LAW

### A.  ALJ's Disability Determination

The ALJ determined that Young is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007); *Anderson v. Barnhart*, 344 F.3d 809, 812 (8th Cir. 2003). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment

---

[6] Administrative Record at 494.

> meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In order to establish a disability claim, "the claimant bears the initial burden to show that [he or] she is unable to perform [his or] her past relevant work." *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998) (citing *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993)). If the claimant meets this burden, the burden of proof then shifts to the Commissioner to demonstrate that the claimant retains the residual functional capacity ("RFC") to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Id.* The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. §§ 404.1545, 416.945. "It is 'the ALJ's responsibility to determine [a] claimant's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own description of her limitations.'" *Page*, 484 F.3d at 1043 (quoting *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined that Young had not engaged in substantial gainful activity since January 31, 2006. At the second step, the ALJ concluded from the medical evidence that Young had the following severe impairments: epilepsy, major depressive disorder, generalized anxiety disorder, fibromyalgia, and narcolepsy. At the third step, the ALJ found that Young did not have an impairment or

combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Young's RFC as follows:

> [Young] has the residual functional capacity to perform light work . . . except she can only occasionally balance, stoop, crouch, kneel, crawl, or climb. She is limited to simple, routine, repetitive work with only superficial contact with the public. [Young] can work at no more than a regular pace.

(Administrative Record at 14.) Also at the fourth step, the ALJ determined that Young could perform her past relevant work as a banquet server. Therefore, the ALJ concluded that Young was not disabled.

### B. Objections Raised By Claimant

Young argues that the ALJ erred in four respects. First, Young argues that the ALJ failed to properly consider the opinions of her treating doctor, Dr. Risk. Second, Young argues that the ALJ failed to properly evaluate her subjective allegations of disability. Third, Young argues that the ALJ failed to fully consider her complaints of debilitating fatigue. Lastly, Young argues that the ALJ provided a flawed hypothetical question to the vocational expert at the administrative hearing.

### 1. Dr. Risk's Opinions

Young argues that the ALJ failed to properly evaluate the opinions of her treating physician, Dr. Risk. Specifically, Young argues that the ALJ's reasons for discounting Dr. Risk's opinions are not supported by substantial evidence on the record. Young concludes that this case should be remanded for further consideration of Dr. Risk's opinions.

An ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence on the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). The opinion of a treating physician:

> should not ordinarily be disregarded and is entitled to substantial weight. A treating physician's opinion regarding an applicant's impairment will be granted controlling weight,

provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.

*Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000) (citations omitted).

"Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is 'inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.' *Id.*"); *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC assessment if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ).

The regulations also require an ALJ to give "good reasons" for giving weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(d)(2). The regulations also require an ALJ to give "good reasons" for rejecting statements provided by a treating physician. *Id.*; *see also Tilley v. Astrue*, 580 F.3d 675, 680 (8th Cir. 2009) ("The regulations require the ALJ to 'always give good reasons' for the weight afforded to the treating source's opinion.") (citation omitted).

In his decision, the ALJ addressed the opinions of Dr. Risk:

> Winthrop Risk, II, M.D., completed a seizure disorder questionnaire in November 2008. Likewise, Dr. Risk completed a fibromyalgia questionnaire. Dr. Risk opined that [Young's] seizure symptoms would cause her to miss about two days of work per month. Stress and sleep deprivation

were precipitating factors. Additionally, [Young] experienced postictal manifestations that lasted overnight following a seizure. Regarding [Young's] fibromyalgia, Dr. Risk failed to note lifting/carrying limitations. However, Dr. Risk again indicated [Young] would miss about two days of work per month. Further, she would require a job that permitted shifting positions at will from sitting, standing, or walking. [Young] would additionally need to take unscheduled breaks during an eight-hour workday. While the undersigned recognizes a treating physician's obligation to his patient, a physician's desire to treat his patient in the most effective manner possible, and the necessity to accept the patient's symptomatic allegations of impairment as worthy of belief in order to appropriately treat the patient, the undersigned does not fully accept the opinion of Dr. Risk. Dr. Risk reported [Young's] seizures occurred relatively infrequently, with several months passing in between episodes. Treatment notes from April 2007 note that [Young] had a history of five seizures during her lifetime. Furthermore, treatment records indicated [Young's] seizures appeared under relatively good control with proper medication. Also of significance, the record indicated [Young] engaged in diverse activities of daily living that are inconsistent with the symptoms alleged by [Young] or the restrictions proposed by Dr. Risk.

(Administrative Record at 15.)

Having reviewed the entire record, the Court finds that the ALJ properly considered and weighed the opinion evidence provided by Dr. Risk. The Court also finds that the ALJ provided "good reasons" for rejecting Dr. Risk's opinions.[7] *See* 20 C.F.R.

---

[7] In her brief, Young contends that the ALJ believed she had five seizures in her lifetime, but the record reflects that "since March 2005, [she] had at least six seizures." Young's Brief (docket number 12) at 19. It is not clear to the Court from Young's citations to the record that the references to seizures constitute six different seizure episodes. Moreover, the Court agrees with the Commissioner's assessment that:

During the time period relevant to [Young's] claim, she first reported a seizure in March 2006, although there was a history of possible seizure prior to [her] alleged onset date in January 2006. In May 2006, she indicated that she had two seizures since October 2005, but the March 2006 was the only seizure

(continued...)

15

§ 404.1527(d)(2); *Strongson*, 361 F.3d at 1070; *Edwards*, 314 F.3d at 967. Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

## 2. Credibility Determination

Young argues that the ALJ failed to properly evaluate her subjective allegations of disability. Young maintains that the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues that the ALJ properly considered Young's testimony, and properly evaluated the credibility of her subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency,

---

[7] (...continued)

for which there was a contemporaneous treatment record. Dr. Quinn's treatment records from May 2006 to April 2007 note a history of a seizure only in March 2006. [Young] reported a seizure or 'couple of seizures' in July 2006. In January 2007, [Young] reported two seizures -- one in April 2006 and in approximately October 2006 -- but the record contains no contemporaneous record of a seizure at those times. At the February 2008 evaluation by Dr. Stientjes, [Young] reported her last seizure was approximately five months earlier, but there is no contemporaneous treatment for a seizure. Thus, the record contains only two reports of seizures contemporaneous with the event -- in March 2006 and in July 2006. Even accepting [Young's] reports of other seizures, the record demonstrates no reported seizures since September 2007 and less than five seizures during the relevant time period.

Commissioner's Brief (docket number 13) at 16. Accordingly, the Court finds Young's argument regarding the frequency of her seizures to be without merit, and the ALJ's finding that Young's "seizures occurred relatively infrequently" to be supported by substantial evidence. *See Guilliams*, 393 F.3d at 801.

and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The absence of objective medical evidence to support a claimant's subjective complaints is also a relevant factor for an ALJ to consider. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (citation omitted). The ALJ, however, may not disregard a claimant's subjective complaints "solely because the objective medical evidence does not fully support them." *Polaski*, 739 F.2d at 1322; *see also Dukes v. Barnhart*, 436 F.3d 923, 928 (8th Cir. 2006) ("In discrediting subjective claims, the ALJ cannot simply invoke *Polaski* or discredit the claim because they are not fully supported by medical evidence.").

Instead, "'[a]n ALJ may discount a claimant's subjective complaints only if there are inconsistencies in the record as a whole.'" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (quoting *Porch v. Chater*, 115 F.3d 567, 572 (8th Cir. 1997)); *see also Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'detail the reasons for discrediting the testimony and set forth the inconsistencies found.'" *Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008) (quoting *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)); *see also Baker v. Apfel*, 159 F.3d 1140, 1144 (8th Cir. 1998) ("When rejecting a claimant's complaints of pain, the ALJ must make an express credibility determination, must detail reasons for discrediting the testimony, must set forth inconsistencies, and must discuss the *Polaski* factors."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Guilliams*, 393 F.3d at 801 (explaining that deference to an ALJ's credibility determination is warranted if the determination is supported by good reasons and

substantial evidence); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Wagner*, 499 F.3d at 851 (quoting *Pearsall*, 274 F.3d at 1218).

In addressing Young's credibility, the ALJ made the following observations:

> After careful consideration of the evidence, the undersigned finds that [Young's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Young's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

> [Young] experiences some symptoms and limitations; however, the record does not fully support the severity of [Young's] allegations. Despite the allegations of symptoms and limitations preventing all work, the record reflects that [Young] went on vacation to the Wisconsin Dells since the alleged onset date. Although vacation and a disability are not necessarily mutually exclusive, [Young's] decision to go on a vacation tends to suggest that the alleged symptoms and limitations may have been overstated. In addition, [Young] is apparently able to care for young children at home, which can be quite demanding both physically and emotionally, without any particular assistance. Similarly, although [Young] complained of fatigue, she mowed her yard and a friend's lawn. . . .

> In sum, the above residual functional capacity assessment is supported by the objective medical evidence contained in the record. Treatment notes in the record do not sustain [Young's] allegations of disabling pain. . . . The credibility of [Young's] allegations is partially weakened by evidence of diverse activities of daily living. [Young] does experience some levels of pain and limitations but only to the extent described in the residual functional capacity above.

(Administrative Record at 16-17.)

It is clear from the ALJ's decision that he thoroughly considered and discussed Young's treatment history, medical history, functional restrictions, and activities of daily living in making his credibility determination. Thus, having reviewed the entire record, the Court finds that the ALJ adequately considered and addressed the *Polaski* factors in determining that Young's subjective allegations of disability were not credible. *See Johnson*, 240 F.3d at 1148; *see also Goff*, 421 F.3d at 791 (an ALJ is not required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)."). Accordingly, because the ALJ seriously considered, but for good reasons explicitly discredited Young's subjective complaints, the Court will not disturb the ALJ's credibility determination. *See Johnson*, 240 F.3d at 1148. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 3.    *Debilitating Fatigue*

Young argues that when making his disability determination, and in particular his RFC assessment, the ALJ failed to fully consider her complaints of debilitating fatigue. Specifically, Young argues that "[i]n light of [her] various diagnoses and her frequent complaints of insomnia and fatigue, one would expect the ALJ to discuss these conditions and complaints."[8] Young concludes that:

> In light of [her] diagnoses, course of treatment, and medications, the ALJ had a duty to thoroughly evaluate her fatigue. He did not do so. The ALJ's decision should be reversed and this matter remanded for a proper evaluation of [her] fatigue.

---

[8] Young's Brief (docket number 12) at 27.

Young's Brief (docket number 12) at 28. In response, the Commissioner argues that Young's argument "rests almost entirely on the premise that because she has conditions that may result in fatigue and/or takes medications that may have side effects of fatigue, then the ALJ should have included additional -- not enumerated -- limitations in the RFC."[9] The Commissioner maintains that such a premise is misplaced because Young "has pointed to nothing in the record that would indicate her fatigue resulted in limitations greater than those found by the ALJ -- including performing only simple, light exertional level work, at no more than a regular pace."[10]

When an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley*, 152 F.3d at 1059. The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson*, 361 F.3d at 1070). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey*, 503 F.3d at 697(citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

Having reviewed the entire record, the Court finds that the ALJ properly considered Young's medical records, observations of treating physicians, and Young's own

---

[9] Commissioner's Brief (docket number 13) at 17-18.

[10] *Id.* at 18.

description of her limitations in making his RFC assessment for Young.[11] *See Lacroix*, 465 F.3d at 887. Furthermore, the Court finds that the ALJ's decision is based on a fully and fairly developed record. *See Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007) (providing that an ALJ also has a duty to develop the record fully and fairly). Because the ALJ considered the medical evidence as a whole, the Court concludes that the ALJ made a proper RFC determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803; *Cox*, 495 F.3d at 618.

### 4. *Hypothetical Question*

Young argues that the ALJ's hypothetical question to the vocational expert was insufficient to account for some of her mental deficiencies in memory and carrying out instructions. Young maintains that this matter should be remanded so that the ALJ may ask a proper hypothetical question to the vocational expert.

Hypothetical questions posed to a vocational expert, including a claimant's RFC, must set forth his or her physical and mental impairments. *Goff*, 421 F.3d at 794. "The hypothetical question must capture the concrete consequences of the claimant's deficiencies." *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) (citing *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997)). The ALJ is required to include only those impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Haggard v. Apfel*, 201 F.3d 591, 595 (8th Cir. 1999) ("A hypothetical question 'is sufficient if it sets forth the impairments which are accepted as true by the ALJ.' *See Davis v. Shalala*, 31 F.3d 753, 755 (8th Cir. 1994) (quoting *Roberts v. Heckler*, 783 F.2d 110, 112 (8th Cir. 1985).").

Having reviewed the entire record, the Court finds that the ALJ thoroughly considered and discussed both the medical evidence and Young's testimony in determining

---

[11] *See* Administrative Record at 14-17 (providing thorough discussion of the relevant evidence for making a proper RFC determination).

Young's impairments.[12]   The Court further determines that the ALJ's findings and conclusions are supported by substantial evidence on the record as a whole. Because the hypothetical question posed to the vocational expert by the ALJ was based on the ALJ's findings and conclusions, the Court concludes that the ALJ's hypothetical question properly included those impairments which were substantially supported by the record as a whole. *See Goose*, 238 F.3d at 985; *see also Forte v. Barnhart*, 377 F.3d 892, 897 (8th Cir. 2004) (an ALJ need only include those work-related limitations that he or she finds credible). Therefore, the ALJ's hypothetical question was not insufficient.

## VI.  CONCLUSION

The Court finds that the ALJ properly considered the medical evidence and opinions in the record, including the opinions of Dr. Risk and Young's complaints of fatigue. The ALJ also properly determined Young's credibility with regard to her subjective complaints of disability. Lastly, the ALJ's hypothetical questions to the vocational expert properly included those impairments which were substantially supported by the record as a whole. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VII.  ORDER

For the foregoing reasons, it is hereby **ORDERED**:

1.      The final decision of the Commissioner of Social Security is **AFFIRMED**;

2.      Plaintiff's Complaint (docket number 3) is **DISMISSED** with prejudice; and

3.      The Clerk of Court is directed to enter judgment accordingly.

DATED this  29ᵗʰ day of _____*February*_____ , 2012.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA

---

[12] *See* Administrative Record at 14-17.

22